UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT TUCKER,

                    Plaintiff,

v.                                                              1:18-CV-0529
                                                                (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KELLY LAGA-SCIANDRA, ESQ.
  Counsel for Plaintiff                           KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226


U.S. SOCIAL SECURITY ADMIN.                  HASEEB FATMI, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II     JASON PECK, ESQ.
  Counsel for Defendant                           RICHARD PRUETT, ESQ.
26 Federal Plaza – Room 3904                  LAURA BOLTZ, ESQ.
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 18.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

## I.      RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1966. (T. 56.) He completed high school. (T. 35.) Generally, Plaintiff's alleged disability consists of enlarged liver, high blood pressure, high cholesterol, bladder problems, and cervical injury. (T. 32, 227.) His original alleged disability onset date was February 1, 2008, which he amended at the hearing to October 10, 2014. (T. 31, 56.) Plaintiff's past relevant work consists of janitorial services. (T. 36.)

## B. Procedural History

On April 25, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 56.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 8, 2017, Plaintiff appeared before the ALJ, Christine Cutter. (T. 28-55.) At the hearing Plaintiff, through counsel, amended his onset date to October10, 2014 and further withdrew his Title II claim. (T. 31-32.) On July 19, 2017, ALJ Cutter issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-27.) On March 12, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-22.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 25, 2014. (T. 14.) Second, the ALJ found Plaintiff

had the severe impairments of: essential hypertension, hyperlipidemia, asthma, hepatitis B, hepatitis C, degenerative disc disease ("DDD"), and loss of visual acuity. (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in [20 C.F.R. § 416.967(b)] except the individual can occasionally climb ramps and stairs; never climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch, and crawl; no work in extreme heat, cold, wet, or humid environments; no work with concentrated exposure to respiratory irritants; no driving a vehicle; no operating dangerous moving machinery; no working at unprotected heights.

(T. 16.)[1]  Fifth, the ALJ determined Plaintiff could not perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 21.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC assessment was not supported by substantial evidence and relied on a gross mischaracterization of the record.  (Dkt. No. 13 at 19-28.)  Second, and lastly, Plaintiff argues the ALJ failed to provide a supported

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

and clear evaluation of Plaintiff's symptoms.  (*Id*. at 28-31.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 17.)

### B.      Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues substantial evidence supported the ALJ's finding that Plaintiff could perform light work with additional limitations.  (Dkt. No. 16 at 12-15.)  Second, Defendant argues the ALJ reasonably assessed the medical source opinions.  (*Id*. at 15-19.)  Third, and lastly, Defendant argues the ALJ reasonably relied more heavily on the objective medical evidence than Plaintiff's subjective complaints.  (*Id*. at 19-20.)

## III.    RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as foll  ows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.  RFC Determination

In general, Plaintiff asserts the ALJ's decision does not provide sufficient analysis

of the objective and opinion evidence in the record to support her RFC determination.

(Dkt. No. 13 at 20.)[2]  First, Plaintiff argues the ALJ erroneously relied on evidence prior

to Plaintiff's amended onset date to support her RFC determination.  (*Id*. at 20-21.)

Second, Plaintiff argues the ALJ ignored objective evidence in the record which

supports greater limitations than imposed in the RFC determination.  (*Id*. at 22-24.)

Third, Plaintiff asserts the ALJ failed to properly assess treating source opinion

evidence and the ALJ failed to recontact treating sources for clarification.  (*Id*. 24-28.)

The RFC is an assessment of "the most [Plaintiff] can still do despite [his]

limitations."  20 C.F.R. § 416.945(a)(1)[3].  The ALJ is responsible for assessing Plaintiff's

---

[2]       Plaintiff's arguments only relate to the ALJ's assessment of his physical impairments.
Plaintiff does not question the ALJ's assessment of his mental impairments or her mental RFC
determination.

[3]       Effective March 27, 2017, many of the regulations cited herein have been amended, as
have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was

RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c).

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella,* 925 F.3d at 95. "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id*. (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id*. "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Id*. at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision of the weight it gives the treating source's medical opinion.' " *Id*. at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

---

filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight ...is a procedural error." *Estrella,* 925 F.3d at 96. "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.' " *Id*. (quoting *Halloran*, 362 F.3d at 33).

Three sources treated Plaintiff for back injuries sustained in an October 2014 motor vehicle accident: neurologist Eric P. Roger, M.D.; pain management specialist Bernard Beaupin, M.D.; and chiropractor Julius Horvath, D.C. Plaintiff concedes the opinions provided by the treating sources were "somewhat broad in stroke"; however, Plaintiff argues the ALJ's assessment of the opinions was "brief and inadequate" and the ALJ provided no citable evidence to support her weight determinations. (Dkt. No. 13 at 24-28.) For the reasons outlined below, the ALJ properly assessed the opinion evidence.

On March 17, 2015, Dr. Roger reviewed objective medical imaging, including a February 2015 MRI, and performed a physical examination of Plaintiff. (T. 640-646.) At that time, Dr. Roger noted he discussed treatment options with Plaintiff. (T. 645.) Dr. Roger indicated surgery would be prophylactic and prevent further spinal cord compression, but there was no guarantee surgery would lead to improvement in function. (*Id*.) Dr. Roger stated, "[b]ased on [Plaintiff's] current complaints and level of pain, in conjunction with the imaging studies available to me today, it is my opinion that [Plaintiff] is considered to be temporarily disabled until follow-up as a result of the motor vehicle accident." (T. 646.)

The ALJ afforded Dr. Roger's March 2015 statement "little weight." (T. 20.) The ALJ concluded statements concerning the ultimate question of Plaintiff's disability were reserved to the Commissioner. (*Id*.) The ALJ further reasoned Dr. Roger's assessment was largely based on Plaintiff's self-report of symptoms and was inconsistent with the record as a whole. (*Id*.)

As stated by the ALJ, the doctor's statement, that Plaintiff was "temporarily disabled," is an ultimate finding of disability reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d) (the ultimate finding of whether a plaintiff is disabled and cannot work is "reserved to the Commissioner"). "A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *see Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). The ALJ did not err in affording the determinations of Dr. Roger's statement little weight, because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ. Indeed, under the regulations the ALJ was not required to afford any weight to Dr. Roger's statement that Plaintiff was "partially disabled."

The ALJ also properly noted Dr. Roger's statement was largely based on Plaintiff's subjective complaints. *See Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir.

2012) (affirming ALJ's decision to give less weight to a doctor's opinion because it was based largely on the subjective statements of a plaintiff, who the ALJ reasonably found to be less than fully credible). Dr. Rogers specifically noted his disability opinion was based, in part, on Plaintiff's subjective complaints. (T. 646.) Therefore, the ALJ properly assessed Dr. Roger's March 2015 statement.

Dr. Beaupin, like Dr. Roger, provided statements to Plaintiff's ultimate disability status, concluding in various treatment notations Plaintiff was "disabled." (*See ex*. T. 552.) Again, the ALJ properly noted such statements were reserved to the Commissioner. (T. 20-21.)

Dr. Beaupin's treatment notations also contained a section entitled "Function." For example, on January 7, 2016, under "Function," it was noted Plaintiff could sit 10-15 minutes, stand 15 minutes, walk 5-10 minutes, lift about a gallon of milk, and slept 2-4 consecutive hours. (T. 549.) The ALJ afforded these statements "little weight." (T. 20.) The ALJ reasoned, "[a]lthough part of Dr. Beaupin's records support a light exertional level, his overall assessment is largely based on [Plaintiff's] subjective self-reports of symptoms." (T. 21.) Again, as with Dr. Roger's statement, the ALJ properly noted limitations were based on Plaintiff's subjective complaints. The "Function" section of Dr. Beaupin's treatment notations was based on Plaintiff's subjective complaints and not the doctor's objective observations. Dr. Beaupin's objective observations and assessments were provided elsewhere in his notations. (*See ex*. T. 551-552.) Therefore, the ALJ properly afforded Dr. Beaupin's statements little weight.

In March of 2017, Dr. Horvath completed a "Spine Residual Functional Capacity Questionnaire." (T. 806-808.) Dr. Horvath indicated Plaintiff could sit for 15 minutes at

one time; stand/walk for 15 minutes at a time; sit for three hours or less in an 8-hour workday; stand/walk less than 2 hours in an 8-hour workday; could occasionally lift less than 10 pounds. (T. 807.) He opined Plaintiff would need more than 10 breaks a day lasting ten minutes each. (*Id*.) He opined Plaintiff would be absent from work as a result of his impairments for more than four days per month. (T. 808.)

The ALJ afforded Dr. Horvath's March 2017 statement "little weight." (T. 20.) The ALJ reasoned the limitations were not supported by objective medical evidence in the record which showed that despite allegation of severe back and neck pain, Plaintiff had full strength in his upper and lower extremities, full range of motion, he was able to ambulate effectively, and straight leg raise tests were negative. (*Id*.) The ALJ further noted Plaintiff presented at appointments as alert, oriented, and in no acute distress. (*Id*.)

As an initial matter, chiropractors, such as Dr. Horvath are not acceptable medical sources under the regulations. 20 C.F.R. § 416.902(a). Because a chiropractor is not an acceptable medical source, an ALJ is not required to give a chiropractor's opinion controlling weight under the Commissioner's regulations for treating sources. *Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) (citing *Diaz v. Shalala*, 59 F.3d 307, 313-314 (2d Cir. 1995) (a chiropractor does not qualify as an acceptable medical source and therefore under no circumstances can the regulations be read to require an ALJ to give controlling weight to a chiropractor's opinion); *see LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (argument that an opinion from a non-acceptable treating medical source should be afforded the same deference as an opinion from an acceptable treating source within the meaning of the

Social Security Administrations regulations is incorrect); *see Bushey v. Colvin*, 552 F.

App'x 97 (2d Cir. 2014) (ALJ properly refused to afford controlling weight to opinion of a

non-acceptable medical source); *see Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir.

2008) (an ALJ is "free to consider" statements of other sources in making her overall

assessment; however, "those opinions do not demand the same deference as those of

a treating physician"); *see Shamburger v. Colvin,* 2017 WL 4003032, at *3 (W.D.N.Y.

Sept. 12, 2017) (chiropractor is not considered an acceptable medical source such as a

treating source who can provide medical opinions).  Therefore, the ALJ was not

required to examine Dr. Horvath's statement with the same deference afforded to an

acceptable treating source.

Further, contrary to Plaintiff's assertions, the ALJ provided citation to evidence in

the record to support her weight determination.  The ALJ noted Dr. Horvath's opinion

was inconsistent with the objective medical observations in the record and provided

citation to the record to support her determination.  (T. 20.)  As outlined by the ALJ,

clinical findings consistently showed full strength in Plaintiff's extremities and normal

straight leg raises tests.  (T. 517, 644, 526-617, 798-804.)  Therefore, the ALJ properly

assessed Dr. Horvath's opinion.

Overall, in her assessment of the opinion evidence in the record, the ALJ

properly evaluated the opinions and her weight determination were supported by

substantial evidence in the record.  Statements concerning Plaintiff's ultimate disability

status were properly discounted because such statements are reserved to the

Commissioner.  Further, functional limitations provided in treatment notations were

based on Plaintiff's subjective reports and not the doctor's objective observations.

Lastly, general limitations and more specific functional limitations, such as those provided by Dr. Horvath, were inconsistent with objective observations in the record.

Plaintiff makes the related argument that the ALJ should have recontacted the physicians prior to giving the opinions little weight. (Dkt. No. 13 at 26-27.) However, as stated by Defendant, a decision can be supported by substantial evidence without any opinions given by treating sources and no duty to recontact a physician prior to giving the opinion little weight exists. (Dkt. No. 16 at 17.) An ALJ is not required to develop the record further where "evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (although treating source's opinion alone might be too vague to support the ALJ's finding, the conclusion plaintiff could perform light work was supported by other substantial evidence in the record and because the record contained sufficient other evidence there was no gap in the record).

Here, the record was sufficient for the ALJ to make her determination. The record contained numerous treatment notations, including medical imagining, surgery history, and objective physical examinations. Plaintiff also provided testimony at a hearing, during which time he was represented by counsel. Therefore, the record was sufficient for the ALJ to make her RFC determination.

Plaintiff argues the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to discuss an MRI conducted in February 2015 and relied too heavily on evidence in the record prior to Plaintiff's amended onset date. (Dkt. No. 13 at 20-24.) Here, the ALJ did not ignore evidence in the record, properly

assessed Plaintiff's RFC, and her determination was supported by substantial evidence in the record.

To be sure, the ALJ did not specifically cite to or discuss the February 2015 MRI. (T. 14-22.) However, an ALJ is "not required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). Further, any error would be harmless because the ALJ reviewed evidence in the record from treating sources which contained the MRI results and there is no likelihood that specific consideration of the MRI would have changed the ALJ's determination. *See Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error existed where there was "no reasonable likelihood" that an ALJ's consideration of a doctor's report, which was essentially duplicate, would have changed the ALJ's determination).

Any error in failing to discuss the MRI is harmless because the ALJ discussed treatment notations provided by Dr. Roger, who ordered and reviewed the findings of the MRI. (T. 17, 20, 644-645.) Further, Dr. Beaupin reviewed the February MRI and included the findings in his treatment notations. (*See ex*. T. 517.) Plaintiff asserts failure to address the MRI is further proof of the ALJ "gloss[ing] over" the severity of Plaintiff's cervical impairment. (Dkt. No. 13 at 22.) However, the ALJ thoroughly discussed evidence of Plaintiff's cervical impairment including other objective medical evidence, including a December 2014 MRI; treatment notations provided by Drs. Roger, Beaupin, and Horvath; and Plaintiff's subjective complaints. (T. 15, 17-18, 20-21.) Therefore, the ALJ did not commit legal error in failing to discuss Plaintiff's February 2015 MRI.

Plaintiff asserts the ALJ impermissibly focused on normal clinical findings or evidence against Plaintiff without consideration for the amount and degree of finding favorable to Plaintiff. (Dkt. No. 13 at 22-24.) However, a review of the record and the AL's decision fails to support Plaintiff's assertion. Although Plaintiff cites to evidence in the record which he claims supports his assertion, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record and here Plaintiff failed to do so. *See Brault,* 683 F.3d at 448; *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position).

Contrary to Plaintiff's assertion, the ALJ did not rely "too heavily" on treatment notations prior to his amended alleged onset date. Although Plaintiff's focus on appeal relate to injuries, specifically cervical, suffered in his 2014 accident, Plaintiff's disability claim also included other impairments such as hepatitis, asthma, and visual limitations. (T. 32.) Therefore, in making her overall RFC determination the ALJ properly considered all of the evidence in the record and not just evidence provided after Plaintiff's accident. *See* 20 C.F.R. § 416.945 (the ALJ will assess a plaintiff's RFC based on "all the relevant evidence" in the record). Further, as outlined by Defendant, as to Plaintiff's spinal impairments, although the ALJ cited to records predating the accident, the majority of the ALJ's citations were to records provided after the accident.

(Dkt. No. 16 at 12 n.5).  Therefore, Plaintiff's assertion that the ALJ unreasonably

assessed his spinal limitations with records that predated the accident is overstated.

Lastly, as noted by Defendant, the ALJ relied on the opinions of the consultative

examiners in formulating her RFC.  (Dkt. No. 16 at 18-19.)  The ALJ discussed the

opinion of non-examining State agency medical examiner, L. Zuniga, M.D., who

ultimately opined Plaintiff was capable of medium work.  (T. 19, 842-851.)  The ALJ

ultimately found Dr. Zuniga's opinion was not restrictive enough because the doctor did

not account for Plaintiff's back impairment.  (T. 19.)  However, the ALJ noted the opinion

supported the conclusion Plaintiff was capable of performing "ongoing competitive

work."  (*Id*.)  Further, the ALJ assessed the examination and opinion provided by

consultative examiner, Abrar Siddiqui, M.D.  (T. 20.)  Dr. Siddiqui opined Plaintiff had

"no limitations in his ability to sit, stand, climb, push, pull, or carry heavy objects" and

Plaintiff should avoid "dust, smoke, and other known respiratory irritants."  (T. 475.)  The

ALJ afforded Dr. Siddiqui's opinion "some weight."  (T. 20.)  The ALJ noted that

additional medical records were received after Dr. Siddiqui provided his assessment

which she considered in her overall RFC analysis; however, Dr. Siddiqui's opinion

supported the conclusion that Plaintiff was capable of performing work at the light level

with additional limitations due to asthma.  (*Id*.)  Therefore, the ALJ relied on the record

as a whole, including consultative examiners' opinions, in formulating her RFC

determination.

Overall, in formulating her RFC, the ALJ properly weighed the medical opinion

evidence in the record.  Although the ALJ did not rely on a specific medical opinion in

formulating her RFC, she relied on the record as a whole, including objective medical

observations and the medical opinions provided by the consultative examiners.  There

is no indication from the record, or the ALJ's determination, that the ALJ overlooked or

cherry picked the evidence.

###### B.    Plaintiff's Subjective Complaints

Plaintiff argues the ALJ failed to sufficiently explain why she found his subjective

complaints not entirely consistent with the medical evidence and other evidence in the

record.  (Dkt. No. 13 at 28-30.)  Plaintiff asserts the ALJ failed to provide a "clear and

explicit" explanation and instead only offered a "summary."  (*Id*.)  Here, the ALJ

provided specific reasons and evidence to support her determination that Plaintiff's

subjective statements were not supported by evidence in the record.  It is a function of

the ALJ, not the reviewing courts, to resolve evidentiary conflicts and "appraise the

credibility of witnesses."  *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638,

642 (2d Cir. 1982); *see also Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017) ("given

the sharply limited scope of [the court's] review, [the court] see[s] no basis for disturbing

the ALJ's credibility determination").

The ALJ must employ a two-step analysis to evaluate the claimant's reported

symptoms.  *See* 20 C.F.R. § 416.929.  First, the ALJ must determine whether, based on

the objective medical evidence, a plaintiff's medical impairments "could reasonably be

expected to produce the pain or other symptoms alleged."  *Id*. § 416.929(a). Second, if

the medical evidence establishes the existence of such impairments, the ALJ must

evaluate the intensity, persistence, and limiting effects of those symptoms to determine

the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ properly assessed Plaintiff's subjective statements and her determination that his complaints were not consistent with the record as a whole was supported by substantial evidence.  The ALJ thoroughly summarized objective medical evidence in the record.  (T. 17-19.)  The ALJ noted treatment received for his back injury, including surgery, which Plaintiff felt was successful.  (T. 18); 20 C.F.R. § 416.929(c)(3)(v)(vi).  The ALJ noted Plaintiff alleged he needed a cane to ambulate; however, the record failed to show an assistive device was needed.  (T. 18.)  The ALJ noted Plaintiff's activities such as his ability to cook, clean, do laundry, shop, and care for his personal hygiene.  (*Id.*); 20 C.F.R. § 416.929(c)(3)(i).  The ALJ noted medication Plaintiff utilized for treatment of pain.  (T. 17-18); 20 C.F.R. § 416.929(c)(3)(v).  Therefore, contrary to Plaintiff's assertion, the ALJ provided more than a summary conclusion to support her determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16)

is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is

further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        July 23, 2019

_____

William B. Mitchell Carter

U.S. Magistrate Judge